UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 17bk03148 |
| Stainless Sales Corporation, | Chapter 7 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

Before the court is Atlas's Request for Payment of an Administrative Expense [Dkt. No. 171] (the "Application") brought by Atlas Toyota Material Handling, LLC ("Atlas") in the above-captioned bankruptcy case (the "Case"). The Application is opposed by David R. Herzog (the "Trustee"), the chapter 7 trustee of Stainless Sales Corporation (the "Debtor"). This matter raises the question of how, if at all, a bankruptcy estate may be held accountable for the actions of a debtor's prepetition assignee for the benefit of creditors.

For the reasons set forth more fully below, upon review of the parties' respective filings, the court finds that Atlas is not entitled, as it claims, to reimbursement of its claim as an administrative expense under the provisions affording administrative expense status to claims by custodians. However, Atlas is entitled to protection, in the manner set forth herein.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed

1

findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Matters arising under section 503(b) of the Bankruptcy Code are matters that may only arise in a bankruptcy case and, thus, the bankruptcy court is empowered to enter final orders with respect to the same. *Matilla v. Radco Merch. Servs., Inc. (In re Radco Merch. Servs., Inc.)*, 111 B.R. 684, 686 (N.D. Ill. 1990) ("A claim for administrative expenses is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B)."). Further, all parties have consented to this court's entry of a final order adjudicating the Application.

Accordingly, determination of the Application is within the scope of the court's jurisdiction and constitutional authority.

## BACKGROUND[1]

Prior to the commencement of this bankruptcy case, the Debtor's business consisted of the distribution of stainless steel products to various manufacturers. When the Debtor's financials began to deteriorate, the Debtor's board of directors approved an assignment for the benefit of creditors (the "Assignment") and selected Michael J. Eber (the "Assignee") of High Ridge Partners as the assignee. The Debtor, in accordance with Illinois law, assigned all of its assets to the Assignee. In order to liquidate those assets, the Assignee arranged for an auction (the "Auction") to take place.

Preceding the Auction, however, Atlas contacted the Assignee to request the return of a forklift which it had leased to the Debtor and which the Assignee then possessed. According to the communications between the Assignee and Atlas, it appears that the Assignee was willing to return the forklift to Atlas. Unfortunately, before that could happen, the Assignee conducted the Auction and therein sold the forklift. Atlas's forklift was sold for $15,500.00.

Before the Assignee and Atlas could resolve this situation, on February 3, 2017 (one-day after the Auction and before the Assignee could distribute the Auction proceeds), other creditors of the Debtor commenced an involuntary bankruptcy proceeding against the Debtor under chapter 11 of the Bankruptcy Code. In that proceeding, this Case, an order for relief was subsequently entered. Approximately one-month later, the court converted the Case from one proceeding under chapter 11 to one proceeding under chapter 7. David R. Herzog was appointed as the chapter 7 Trustee.

On August 14, 2017 Atlas filed the Application, initially seeking an administrative expense for $15,500.00 under section 503(b)(3)(E) of the Bankruptcy Code. Atlas's central argument was that, under *Reading Co. v. Brown*, 391 U.S. 471, 478 (1968), Atlas should be allowed to recover its

---

[1] In addition to the items discussed herein, the court has also taken into consideration any and all exhibits submitted in conjunction with the matter before it. Though these items do not constitute an exhaustive list of the filings in the instant case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

claim against the Assignee as a section 503(b)(3)(E) administrative expense of the bankruptcy estate. That claim against the Assignee, as asserted by Atlas, was for liability arising out of civil conversion. In the alternative, Atlas argued that a constructive trust should be imposed on the estate in the amount of the proceeds of the sale of the forklift.

On September 1, 2017, the Trustee filed its response (the "Response"). The Trustee argued that Atlas's request was inappropriate for several reasons. The Trustee argued that the proceeds from the sale of the forklift did not provide a benefit to the estate and that there was no evidence the proceeds were paid to the Trustee, thus defeating a section 503(b)(3) administrative expense request. The Trustee further contended that a constructive trust should not be imposed as the proceeds from the sale of the forklift cannot be traced to the bankruptcy estate. Finally, the Trustee argued that if an administrative expense is allowed, the court should not direct the payment of said expense.

On October 17, 2017, the court conducted a hearing (the "Hearing") on the Application, at which counsel for Atlas and the Trustee argued in support of their respective positions. During the Hearing, it became clear that Atlas would be unlikely to succeed under section 503(b)(3)(E). Instead, the discussion shifted to whether Atlas was entitled to protection under section 543(c)(1) of the Bankruptcy Code, and if so, what manner of that protection would be appropriate.

## DISCUSSION

A.  <u>Administrative Expense under Section 503(b) and *Reading*</u>

Atlas contends that it is entitled to be compensated for the Assignee's obligation to it as an administrative expense under section 503(b)(3)(E) of the Bankruptcy Code. The Trustee responds that an administrative expense would be improper under the standard set forth for the same. Further, the Trustee argues that the court should not direct payment of that administrative expense.

Section 503(b) provides, in pertinent part, that "after notice and a hearing, there shall be allowed administrative expenses, …, including, (3) the actual, necessary expenses, … (E) incurred by a custodian superseded under section 543 of this title, and compensation for the services of such custodian." 11 U.S.C. § 503(b)(3)(E).

Atlas relies almost entirely on *Reading* to advance its argument. In *Reading*, the Supreme Court considered how, if at all, a party to whom a receiver of the debtor's had become obligated after the commencement of the bankruptcy case should be compensated from the bankruptcy estate. There, a fire took place several months after the debtor had filed the petition for bankruptcy, while the custodian remained in possession of the property. *Reading*, 391 U.S. at 473. In considering the issue, the Supreme Court found that an administrative expense claim was appropriate because "costs that form 'an integral and essential element of the continuation of the business' are necessary expenses even though priority is not necessary to the continuation of the business." *Id.* at 484.

Atlas's faith in *Reading* is, however, misplaced for several reasons.

First, *Reading* is a pre-Bankruptcy Code case. While such pre-Bankruptcy Code cases may "inform [ ] our understanding of the code," *Harford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 10 (2000); *see also Colfin Bulls Fundings A, LLC v. Paloian (In re Dvorkin Holdings, LLC)*, 547 B.R.

3

880, 893 (N.D. Ill. 2016), such cases are not controlling law in the present day. "[P]re-Code practices 'cannot overcome th[e] language of the Code.'" *Harford Underwriters*, 530 U.S. at 10; *see also Dvorkin*, 547 B.R. at 893. First and foremost, this court is obligated to interpret the Bankruptcy Code, not pre-Bankruptcy Code. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 648 (2012); *see also Dvorkin*, 547 B.R. at 893. Here, Congress has legislated to these issues in sections 503 and 543 of the Bankruptcy Code and the court is obligated to apply those previsions above and beyond any general considerations advocated by *Reading*. *In re Willett*, 544 F.3d 787, 793 (7th Cir. 2008) (when the Bankruptcy Code is sufficient alone to handle a situation, there is no need to look further).

Second, *Reading* appears limited on its facts to postpetition conduct. The Seventh Circuit, for example, relied on *Reading* relatively recently in just that limited contact. *In re Resource Tech. Corp.*, 662 F.3d 472, 474 (7th Cir. 2011). In *Resource Tech.*, the noxious fumes which prompted a disastrous decrease in a hotel's business appeared months after the debtor filed its petition for bankruptcy, again, while the custodian remained in possession. 662 F.3d at 474. The Seventh Circuit considered *Reading*'s treatment of postpetition torts to be persuasive. In part based on *Reading*, it found authority under section 503(b)(1) to award those tortiously harmed by a custodian with an administrative expense reimbursement. *Id.* at 484. Nothing in *Resource Tech.*, or otherwise in the controlling case law, extends such reasoning to prepetition expenses.[2]

Thus, Atlas cannot rely on *Reading* to assert an administrative expense under generally section 503(b). Looking instead at the statute itself, under section 503(b)(3)(E), Atlas fares no better.

Atlas contents that as section 503(b)(3)(E) provides administrative expense status for the actual, necessary expenses incurred by a custodian, it is entitled to assert such expenses directly against the bankruptcy estate. That appears to be an attenuated reading of the provision. Section 503(b)(3), for example, provides the same status for the actual and necessary expenses of creditors who commence involuntary proceedings and creditors that recover transferred or concealed by the debtor. 11 U.S.C. § 503(b)(3)(A) & (B). By Atlas's logic, any party to whom such creditors are obligated would have the standing to assert the claims directly against a bankruptcy estate. There seems little to constrain such a reading. Would a bankruptcy estate, for example, be liable to the telephone bills of such creditors directly to the phone companies in question?

Allowing creditors of creditors to assert such expenses is a slippery slope, and leads to results inconsistent with the Bankruptcy Code's overall scheme. *United States v. Chemetco, Inc.*, 274 F.3d 1154, 1159 (7th Cir. 2001) (consistency with the statutory scheme is to be considered when giving effect to statutory interpretations). It would also render section 503(b)(4) meaningless, as it would allow attorneys or accountants of the parties covered by section 503(b)(3) to assert their own claims directly under the latter section. Such a reading would be inappropriate. *United States v. Miscellaneous*

---

[2] Other Circuits have made similar holdings. The First Circuit has explicitly stated that under *Reading* that prepetition conduct should not be considered as an administrative claim, whereas postpetition conduct can. *Munce's Superior Petroleum Prods., Inc. v. N.H. Dep't of Envtl. Servs. (In re Munce's Superior Petroleum Prods., Inc.)*, 736 F.3d 567, 571(1st Cir. 2013). The Eighth Circuit has required an injury postpetition. *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 390 (8th Cir. 2001). Finally, the Ninth Circuit has held that *Reading* specifically involves "post-petition tort-like conduct." *Nat'l Labor Relations Bd. v. Walsh (In re Palau Corp.)*, 18 F.3d 746, 751 (9th Cir. 1994).

*Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.").

The better reading of section 503(b)(3) is that such expenses are for the named parties alone—in this case, the custodian—to assert. As a result, the court cannot accept the contention that Atlas has a direct right to assert an administrative expense under section 503(b)(3)(E). Instead, as discussed below, the Bankruptcy Code provides another level of protection for such parties, one that would also be meaningless if Atlas's interpretation of section 503(b)(3)(E) were accepted.

For these reasons, Atlas's reliance on section 503(b)(3)(E) and *Reading* is rejected.

B.  <u>Protection under Section 543(c)(1)</u>

As noted above, at the Hearing, the argument turned to whether Atlas is entitled protection under section 543 of the Bankruptcy Code, and if so, what nature of protection would be appropriate.

Section 543(c)(1) states that "the court, after notice and hearing, shall protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property." 11 U.S.C. § 543(c)(1). Such protection is obligatory. By using "shall" in the provision, Congress requires the courts to act if the requirements are satisfied. *Kingdomware Techs., Inc. v. United States*, — U.S. —, 136 S. Ct. 1969, 1977 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty.").

Here, as the requisite hearing has been conducted, the question is whether there is an obligation that qualifies.

There is little doubt that the Assignee's sale of Atlas's forklift was wrongful. Atlas alleges that such sale resulted in conversion liability, and the Trustee makes no real attempt to rebut that allegation. The email correspondence between Atlas and the Assignee makes clear that the essential elements of conversion exist. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004). Under Illinois law, the Assignee is thus obligated to Atlas. *In re Thebus*, 483 N.E.2d 1258, 1259 (Ill. 1985). The court therefore accepts Atlas's contention. The court also accepts that the Assignee's obligation to Atlas satisfies section 543(c)(1) in this regard.

What property is that obligation in relation to? While the Trustee challenges Atlas's ability to trace the funds from the Auction to the bankruptcy estate and that might be fatal to the constructive trust argument, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002), that doesn't appear necessary here. While it is true that "when a fungible asset is commingled, it is considered part of the whole, unless it can be traced," *S.N.A. Nut Co. v. Tulare Nut Co. (In re S.N.A. Nut Co.)*, 204 B.R. 537, 542 (Bankr. N.D. Ill. 1997) (Katz, J.), the facts establish that all of the Debtor's property in the Assignee's custody became property of the bankruptcy estate.[3]

---

[3] The Assignee filed a Notice of Turnover of Estate [Dkt. No. 72], as well as a Final Report [Dkt. No. 82], evidencing the transfer of property to the estate.

Thus that whole is the property in question, and Atlas has a claim cognizable under section 543(c)(1), even if it cannot meet the heightened standards of a constructive trust. Had that property of the bankruptcy estate included the forklift, Atlas would have been able to come to the court for relief. Instead, the forklift being sold and the sale price having been paid to the Assignee,[4] Atlas now lays claim to an obligation from the Assignee. The Assignee is obligated to Atlas with respect to the property of the bankruptcy estate, and this element of section 543(c)(1) is therefore satisfied.

1. *The Nature of the Protection*

The nature of protection available under section 543(c)(1) is, however, not so simple. The word "protection" in the context of section 543(c)(1) is undefined. The statute itself does not explain its use,[5] and while "adequate protection" is used copiously throughout the Bankruptcy Code,[6] the use of the term protection alone occurs only in this section. A search of the legislative history of section 543 is equally unhelpful.

Another bankruptcy court making the same inquiry has equated protection with payment without further analysis, stating that "the Court would be required to provide for the payment of all of the Receiver's unpaid bills." *In re 400 Madison Avenue Ltd. P'ship*, 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997). Ten years later, another bankruptcy court echoed that ruling, also with no analysis. *In re Wayne Engineering Corp.*, Case No. 05-03394, 2007 WL 704521, at *2 (Bankr. N.D. Iowa Mar. 5, 2007). While COLLIER ON BANKRUPTCY states the same, it does so in reliance on *400 Madison Ave.* and *Wayne*.[7] In short, no case appears to have actually taken up the issue.

Equating "protection" with "payment" is a convenient shorthand, and certainly will not be objected to by the parties to whom a custodian has become obligated. But for bankruptcy courts, of all courts, to apply such shorthand is problematic. Where is the determination of a party by *vis-à-vis* the creditors of the estate? Determining relative priorities is part and parcel to what bankruptcy courts do. The question therefore deserves more attention than it has received.

Immediate payment, such as appears to be the result in *400 Madison Ave.* and *Wayne*, creates a sort of superpriority status that is not clearly called for. To give that status as a default flies in the otherwise parsimonious approach taken by the courts such as in the tort cases discussed above. Further equating "protection" with "payment" is at odds with section 543(c)(2), which does in fact expressly call for payment of the expenses. Congress clearly knew how to direct payment expressly

---

[4]   Atlas alleges that the proceeds from the forklift were paid to the Assignee. The Trustee has not contested that allegation.

[5]   "When attempting to decipher the proper interpretation of a statute, we begin by determining 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648-49 (7th Cir. 2011).

[6]   "When interpreting statutory language, the meaning attributed to a phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Katsen v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 6 (2011); *see also River Road Hotel Partners, LLC*, 651 F.4d at 649.

[7]   COLLIER ON BANKRUPTCY states that the protection under § 543(c)(1) "means that a trustee is required to pay the custodian's unpaid bills." ¶ 543.04 (16th ed. 2017).

when such was the intended result. That it did not do so hear indicates that Congress has something else in mind. *In re Walker*, 502 B.R. 324, 332 (Bankr. N.D. Ill. 2013) (Barnes, J.) (concluding that Congress's choice of precise phrases at points indicated some other intended meaning when precision was not used).

Of course, the court could view such protection so satisfied by allowing parties to whom a custodian had become obligated to assert general, unsecured claims against the estate. That is arguably more than they are entitled to. *See In re Euro-American Lodging Corp*, 357 B.R. 700, 717 (Bankr. S.D.N.Y. 2007) (implying that such parties would have no direct claim against a debtor but for bankruptcy); *see also* 11 U.S.C § 503(b)(1) (providing for the disallowance of claims not enforceable against the debtor or property of the debtor). But such claims might be worthless and thus constitute no protection at all. Further, despite the grant of authority in section 543(c)(1), the court would be hard pressed to afford any such claim a priority. Unlike section 503's open-ended list of administrative expenses discussed below, section 507's list of priority claims is close-ended.

That brings us back to administrative expenses under section 503. After all, section 543(c)(1) obligations are, at least from the custodian's perspective, its expenses. While, so discussed above, a party such as Atlas may not assert the custodian's expenses on the custodian's behalf, that party does not need to. As alluded to above, section 503(b)'s list of administrative expense is expressly, by use of the term "including" and being joined by "and," nonexhaustive and demonstrative. *See In re World Marketing Chicago, LLC*, 564 B.R. 587, 595 (Bankr. N.D. Ill. 2017 (Barnes, J.) The courts that have considered this issue uniformly agree on this. *See, e.g., Mediofactoring v. McDermott (In re Connolly N. Am., LLC)*, 802 F.3d 810, 816 (6th Cir. 2015); *Al Copeland Enters. V. State of Texas (In re Al Copeland Enters.)*, 991 F.2d 233, 239 (5th Cir. 1993); *United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1106 (9th Cir. 1989).

While, as in *Connolly*, local precedent holds that administrative expenses are to be strictly construed, *In re Walsh*, 538 B.R. 466, 473 (Bankr. N.D. Ill. 2015) (Cox, J.), the balance between strict construction and need is struck so long as there exists sufficient policy and legal justifications to add to the list. *In re Beale*, 358 B.R. 744, 748 (Bankr. N.D. Ill. 2006) (Black, J.) (implying that it is possible to create another administrative expense as long as there is sufficient policy and legal justifications); *In re Adams*, 275 B.R. 274, 281-82 (Bankr. N.D. Ill. 2002) (Schmetterer, J.) (stating that additional types of administrative claims can be created if there are sufficient policy justifications).

Here there is a compelling justification to afford these parties administrative expense reimbursement. Section 543 requires the court to protect innocent parties, such as Atlas, to whom a custodian has become obligated. They may not assert section 503(b)(3)(E) expenses directly, and the custodian who is obligated to them may not do so at all. Allowing the court to fashion a remedy appears to be precisely what Congress intended, and the use of the term protection itself—a term otherwise without specific meaning in bankruptcy parlance, appears intended to allow the court the maximum amount of flexibility in so doing.

The court recognizes that in affording Atlas the right to expense reimbursement under section 503(b), it is allowing a prepetition cost to burden the estate. While neither *Reading* nor its progeny can be reasonably read to prevent this, the uninformed might find this irrational. As noted above, however, such a right is consistent with case law surrounding these obligations, and seems well within the authority and duty conveyed upon the court under section 543(c)(1). Further, Congress itself has amended section 503(b) to include prepetition obligations so as to prevent

7

extraordinary rights. *See* 11 U.S.C. § 503(b)(9) (as added in 2005).[8] Further still, the historical practice underlying section 543(c) itself supports such a result. In *Shapiro v. Chatz (In re A. Roth Co.)*, 128 F.2d 428, 430 (7th Cir. 1942), the Seventh Circuit discussed how the existent case law under the Bankruptcy Act supported affording the administrative expenses to a prior general assignment or receivership a priority in the bankruptcy. While the Seventh Circuit rejected the claim of the applicant there under, *id.*, affording these obligations administrative expense status appears appropriate and statutorily supported here. Last, an administrative expense is a lesser remedy than requiring direct payment, as was done in *400 Madison Ave.* and *Wayne*. That treatment is a higher one than is being afforded here. This at least requires the protection afforded Atlas to be treated ratably with the other administrative obligations of the estate.

The court therefore concludes that Atlas is entitled to protection under section 543(c)(1), and that that same section affords the court the latitude to set that protection in this instance as a right to an administrative expense. In so doing, however, the court agrees with the Trustee that the court need not order any special payment mechanism or new timing. The Bankruptcy Code adequately addresses both, and there is no need to replicate that here.

## CONCLUSION

For all of the foregoing reasons, the Application will be granted as set forth herein. Atlas is afforded administrative expense status under section 503(b) for the $15,500.00 obligation as protection under section 543(c)(1). A separate order to that effect will be entered concurrently herewith.

Dated: December 22, 2017

_____
Timothy A. Barnes
United States Bankruptcy Judge

A.H.

---

[8] "[T]he value of any goods received by the debtor within 20 days *before* the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 509(b)(9) (emphasis added).