UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bk03148 |
| | ) | |
| Stainless Sales Corporation, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

Before the court is the Application for Allowance and Payment of Administrative Expense Claim [Dkt. No. 181] (the "Application") brought by Michael J. Eber and High Ridge Partners, Inc. (together, the "Assignee") in its capacity as assignee for the benefit of creditors of Stainless Sales Corporation (the "Debtor") in the above-captioned bankruptcy case (the "Case"), seeking to have the court award an administrative expense to the Assignee's counsel Katten Munchin Rosenman LLP ("Katten"). The Application is opposed by David R. Herzog (the "Trustee"), the chapter 7 trustee of the Debtor. This matter calls into question if, and if so the extent to which, a custodian's counsel is entitled to an administrative expense, and what standards should be applied to specific time periods in a bankruptcy case.

For the reasons set forth more fully below, upon review of the parties' respective filings, the court finds that the Assignee's counsel is entitled to an administrative expense for its reasonable compensation for services rendered for the Assignee and actual, necessary expenses, in the manner set forth herein.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them

1

without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

An application for administrative expenses arises under section 503(b) of the Bankruptcy Code and thus may only arise in a bankruptcy case. The bankruptcy court is therefore empowered to enter final orders with respect to the same. *Matilla v. Radco Merch. Servs., Inc. (In re Radco Merch. Servs., Inc.)*, 111 B.R. 684, 686 (N.D. Ill. 1990) ("A claim for administrative expenses is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B)."). Further, all parties have consented to this court's entry of a final order adjudicating the Application.

Accordingly, determination of the Application is within the scope of the court's jurisdiction and constitutional authority.

## PROCEDURAL HISTORY

The court has considered the arguments of the parties at the hearing on November 29, 2017 (the "Hearing"), and has reviewed and considered the following filed documents in the Case to be relevant:

(1) The Application;

(2) Exhibit 1 to the Application [Dkt. No. 181-1] ("Exhibit 1");

(3) Exhibit 3 to the Application [Dkt. No. 181-3] ("Exhibit 3");

(4) Chapter 7 Trustee's Response to Application for Allowance and Payment of Administrative Expense Claim of Katten Muchin Rosenman LLP [Dkt. No. 191] (the "Response");

(5) Exhibit A to the Response [Dkt. No. 191-1] ("Exhibit A");

(6) Reply in Support of Application for Allowance and Payment of Administrative Expense Claim [Dkt. No. 199] (the "Reply"); and

(7) Supplement to Application for Allowance and Payment of Administrative Expense [Dkt. No. 202] (the "Supplement").

The court has also considered the procedural history and previous court filings in the Case generally in determining the propriety of the Application and has found the additional filings to be relevant:

(a) Emergency Motion To Direct Assignee [Dkt. No. 12] (the "543 Motion");

(b) Trust Agreement and Assignment for the Benefit of Creditors of Stainless Sales Corporation (Exhibit A to the 543 Motion) [Dkt. No. 12-1] (the "Assignment Agreement");

(c) Order Granting and Continuing Emergency Motion to Direct Assignee [Dkt. No. 25] (the "543 Order");

(d) Second Order Granting and Continuing Emergency Motion to Direct Assignee [Dkt. No. 37];

(e) Third Order Granting and Continuing Emergency Motion to Direct Assignee [Dkt. No. 50];

(f) Fourth Order Granting Motion to Direct Assignee [Dkt. No. 62];

(g) Order for Relief [Dkt. No. 47] (the "Order for Relief");

(h) Order Converting Debtor's Case to a Case Under Chapter 7 [Dkt. No. 56] (the "Conversion Order");

(i) Application for Allowance and Payment of Administrative Expense Claim and Request for Approval of Limited Notice [Dkt. No. 99];

(j) Amended Application for Allowance and Payment of Administrative Expenses [Dkt. No. 126] (the "Assignee Application");

(k) Chapter 7 Trustee's Response to Amended Application for Allowance and Payment of Administrative Expense Claim of High Ridge Partners, Inc. [Dkt. No. 133];

(l) Reply in Support of Amended Application for Allowance and Payment of Administrative Expense Claim of High Ridge Partners, Inc. [Dkt. No. 137]; and

(m) Findings of Fact and Conclusions of Law in Support of Order Awarding to High Ridge Partners, Prepetition Assignee, for Allowance and Payment of Compensation and Reimbursement of Expenses as an Administrative Claim [Dkt. No. 141] (the "Assignee Award").[1]

In addition to the items discussed herein, the court has also taken into consideration any and all exhibits submitted in conjunction with the matter before it. Though these items do not constitute an exhaustive list of the filings in the instant case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

---

[1] *In re Stainless Sales Corp.*, Case No. 17bk03148, 2017 WL 2829675, at *1-2 (Bankr. N.D. Ill. June 27, 2017) (Barnes, J.).

3

BACKGROUND

Prior to the commencement of the Case, the Debtor's business consisted of the distribution of stainless steel products to various manufacturers. When the Debtor's financial condition began to deteriorate, the Debtor's board of directors approved the Assignment Agreement, commencing an Illinois assignment for the benefit of creditors through which the Assignee was duly appointed to liquidate the assets of the Debtor (the "ABC").[2] On or about November 11, 2016, Katten was engaged by the Assignee under a general retainer in the amount of $155,000.00[3] (the "Retainer") to provide legal assistance regarding the Assignee's duties. Among the services with which Katten assisted were settlements with creditors and an auctioning of the Debtor's equipment on February 2, 2017 (the "Auction").

On February 3, 2017 (the "Petition Date"), one day after the Auction but prior to the consummation of the sale under the Auction (the "Sale"), certain creditors of the Debtor commenced an involuntary bankruptcy proceeding against the Debtor under chapter 11 of the Bankruptcy Code. Timed as it was, the petition prevented the Sale from being concluded, leaving the Assignee in limbo. Further, the petitioning creditors sought no first-day relief from the court to clarify this situation. Through Katten, the Assignee attempted to obtain instructions from the Debtor regarding the turnover of the Debtor's property in the Assignee's possession (the "Assets"), but the Debtor did not wish to actively participate in the bankruptcy. As a result, the Assignee remained in possession of the Debtor's property, and in light of the Sale and the continuing duties of the Assignee under the ABC, Katten promptly filed the 543 Motion seeking on behalf of the Assignee guidance from the bankruptcy court on how to proceed.

On February 9, 2017, the court conducted a hearing on the 543 Motion at which the Assignee, Katten and the petitioning creditors were present and at which no party contested the Assignee's continuing possession of the Assets. The Debtor, through counsel, also appeared but took no position on the matters. As a result, the court entered the 543 Order, which directed the Assignee to remain in possession of the Assets and continue to administer them in accordance with prepetition agreements and the Sale. The 543 Order also relieved the Assignee of the requirements imposed by section 543(a) and (b) of the Bankruptcy Code. Though the 543 Order was of limited duration, additional orders under section 543 were subsequently granted throughout the chapter 11 proceedings, preserving the effects of the 543 Order up until the appointment of the Trustee.

On February 28, 2017, there being no contest and the Petition having been raised, the Order for Relief was granted. Nonetheless, without the participation of the Debtor, the case continued to

---

[2] In Illinois, an assignment for the benefit of creditors is a voluntary insolvency proceeding that functions similarly to bankruptcy, however it is a product of state common law and is an alternative to bankruptcy. *Ill. Bell Tel. Co. v. Wolf Furniture House, Inc.*, 509 N.E.2d 1289, 1291 (Ill. App. Ct. 1987) ("An assignment for the benefit of creditors, therefore, is simply a unique trust arrangement in which the assignee (or trustee) holds property for the benefit of a special group of beneficiaries, the creditors."). An assignment for the benefit of creditors transfers an assignor's legal and equitable title, as well as custody and control of its property, to an assignee, who in turn, liquidates that property for the benefit of creditors. *Id.* (*citing Browne-Chapin Lumber Co. v. Union Nat'l Bank of Chicago*, 42 N.E. 967, 970 (Ill. 1896)); *see also Black v. Palmer*, 145 N.E.2d 797, 799 (Ill. App. Ct. 1957).

[3] According to the Application, $19,292.67 of the Retainer was applied prepetition, leaving a balance of $135,707.33.

founder. On March 7, 2017, the court entered the Conversion Order, converting the Case from a proceeding under chapter 11 to a proceeding under chapter 7 (the "Conversion"). The Trustee was thereafter appointed on March 16, 2017. After the Conversion, Katten continued to render legal services to the Assignee.

On September 1, 2017, the Assignee filed the Application, initially seeking four forms of relief. First, the Assignee sought to allow Katten an administrative expense representing the amount due prior to the Petition Date and to allow Katten to withdraw that value from the Retainer. Though Katten's services for that period were not presented with any degree of particularity in the Application, the request for reimbursement for work performed prior to the Petition Date and the application of the Retainer to the same were not contested by the Trustee. Second, the Assignee sought compensation for services rendered by Katten for services performed between February 3, 2017, and June 27, 2017 (the "Statement Period"). The Assignee requested an administrative expense for Katten's services during the Statement Period under sections 503 and 543 of the Bankruptcy Code. Third, the Assignee sought authorization for Katten to apply the remaining balance of the Retainer to that owed for Katten's services during the Statement Period. Last, the Assignee sought an administrative expense and court authority for the Trustee to pay Katten the remaining amount owed to Katten after application of the Retainer to the amounts owed for the Statement Period.

On October 13, 2017, the Trustee filed the Response opposing the last three requests. On October 27, 2017, the Assignee filed the Reply in support of those requests. Further, without leave of the court, the Assignee filed the Supplement on November 28, 2017, to correct for inaccuracies made in the Application for Katten's incurred fees. In the Supplement, the Assignee also noted that Katten incurred additional costs for services provided to the Assignee since the initial filing of the Application. The Assignee has not filed a final application that reflects a calculation and request for compensation of those additional costs and services.

At the Hearing on the Application, at which counsel for the Assignee and the Trustee argued in support of their respective positions, the court stated that it would narrow its analysis to the legal issue of whether or not the Assignee was entitled to an administrative expense. The court also instructed the parties that only after that determination, if necessary, the court would conduct a further hearing on the quantification of the expenses. Upon review of the record of this matter, the court finds no other hearing necessary and this Memorandum Decision and accompanying order fully conclude the matter.

## DISCUSSION

This matter is fundamentally about the treatment of administrative expenses of custodians and their counsel. The custodian in the Case, the Assignee, seeks an administrative expense for its counsel, Katten, under alternative theories based in section 503(b)(1), section 503(b)(3), section 503(b)(4) and section 543 of the Bankruptcy Code.

The Trustee has objected to the Application raising what are in essence four points of contention. First, the Trustee contends that Katten may not be allowed an administrative expense as it was required to seek approval from the court to render legal services to the Assignee. Second, the Trustee contends that administrative expenses under section 503 are limited to claims for prepetition services. Third, the Trustee contends that the services were unreasonable and not

5

sufficiently described, resulting in vague, duplicative and excessive time entries. Last, the Trustee contends that Katten's services in preparing and defending the Assignee Application were unreasonable and should be reduced.

Before taking up the Trustee's objections, it is necessary to first determine which of the Assignee's alternative statutory arguments carries the day.

A.      Applicable Law

It is not contested that the Assignee was a "custodian" as defined in the Bankruptcy Code. 11 U.S.C. § 101(11)(B) (an "assignee under a general assignment for the benefit of the debtor's creditors").

As a custodian, the Assignee previously sought and was awarded an administrative expense under section 503(b)(3)(E). *See* Assignee Award. Administrative expenses under section 503(b)(3)(E) are reserved for custodians, and recently this court discussed the nuances of that section in an unrelated case. *In re Montemurro*, Case No. 17bk10230, 2018 WL 836387, at *11 (Bankr. N.D. Ill. Feb. 13, 2018) (Barnes, J.). The court has also addressed recently the eligibility of a party to whom a custodian has become obligated to seek an administrative expense thereunder. *In re Stainless Sales Corp.*, 579 B.R. 836, 841 (Bankr. N.D. Ill. 2017) ("*Stainless I*").

Katten is not a custodian, however, but rather counsel rendering services to a custodian. Katten is therefore not eligible for an administrative expense under section 503(b)(3)(E). *See, e.g., Stainless I*, 579 B.R. at 842 ("The better reading of section 503(b)(3) is that such expenses are for the named parties alone ...."). Katten may, however, be eligible to be compensated under section 543(c)(1) (as a party to whom the Assignee has become obligated), section 543(c)(2) (as a cost or expense of the Assignee) or under section 503(b)(4) (as an administrative expense of a professional serving a party with an expense under section 503(b)(3)).

The first, section 543(c)(1), appears to be implicated on its face. Section 543(c)(1) states that the court shall "protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property." 11 U.S.C. § 543(c)(1). Katten appears to be such an entity. Unlike section 503(b), section 543 does not include a separate provision for the payment of a custodian's professionals. It follows therefore that such professionals would be eligible elsewhere, as the intention behind section 543 appears to be to prevent custodians from being caught out by a bankruptcy filing. *See Randolph & Randolph v. Scruggs*, 190 U.S. 533, 538 (1903) (finding cause to compensate an assignee's "services, or services procured by him ...."). "The legislative history shows that § 503(b)(3)(E) was specifically designed to codify the rule articulated in *Randolph*." *In re 29 Brooklyn Ave., LLC*, 548 B.R. 642, 645 (Bankr. E.D.N.Y. 2016). As such an entity, Katten would be entitled to protection which, under the right circumstances, might include an administrative expense. *Stainless I*, 579 B.R. at 844-45.

Section 543(c)(2) may also be implicated. Section 543(c)(2) states that the court shall "provide for the payment of reasonable *compensation for services* rendered and *costs* and *expenses* incurred by" a custodian. 11 U.S.C. § 543(c)(2) (emphasis added). Thus compensation, costs and expenses of a custodian are compensable. Section 503(b) severs professional services to a custodian from services by a custodian, saying with respect to the latter that a custodian may recover "the actual, necessary *expenses*, ... incurred by ... a custodian superseded under section 543 of this title, and

6

*compensation for the services* of such custodian." 11 U.S.C.§ 503(b)(3)(E) (emphasis added). Under section 503, only compensation and expenses are compensable. Clearly, therefore, section 543(c)(2) contains an extra element: costs. Again, as section 543(c) mentions nothing about professional services but was clearly intended to capture them, it may be that this additional element—costs—captures those services.

Finally, section 503(b)(4) speaks directly to the issue, stating in pertinent part that an administrative expense is allowed for

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4).

Why, then, all the possibilities?

The court first noted the redundancy in these Bankruptcy Code sections in *Stainless I*. 579 B.R. at 842. In *Montemurro*, the court attempted to reconcile the sections. 2018 WL 836387, at *6-7. There it concluded that:

> In that instance (where a superseded custodian might argue for compensation from both sections), given the discretion afforded the court in considering which section to apply, the best use of that discretion is as follows: *If and to the extent the compensation requested of the custodian is to be paid from estate property, the heightened standard of actual and necessary as set forth in section 503(b)(3)(E) should be applied.* To the extent compensation is from another source, the reasonableness standard in section 543(c)(2) should apply. If a custodian is excused from compliance under section 543(d), however, only the section 543(c)(2) reasonableness standard would apply. That comports with the abstention principles behind section 543(d) as set forth in the legislative history.

*Montemurro*, 2018 WL 836387, at *8 (emphasis added). Though not perfect, this was the best way the court could find to reconcile the provisions. *Cf. United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.").

Here, as will be discussed in greater detail below, Katten seeks payment for services in three legally distinct periods: (i) prior to the Petition Date; (ii) during the chapter 11 case; and (iii) during the chapter 7 case.

With respect to the first period, while it has been shown that administrative expenses are not limited solely to postpetition obligations, *see Stainless I*, 579 B.R. at 845, as noted in *Stainless I*, the court does not take such steps lightly. Here, where either section 543(c)(1) or section 543(c)(2) would suffice as grounds to authorize the payment, there is no need to resort to section 503 and the redundancy is not triggered. Katten must still demonstrate that the predicates of those sections have

7

been met (in the latter case, that the services were reasonable). Because the standards are different and because this issue has been insufficiently addressed in the filings to date, however, the court will leave a determination of which section applies specifically until after the parties have addressed it.

With respect to the second and third periods, the standards are the same and the redundancy exists.[4] As neither the Katten nor the Assignee has identified a source of payment other than the Assets or the proceeds thereof, each of which would be estate property of the bankruptcy estate,[5] pursuant to *Montemurro*, section 503 applies. 2018 WL 836387, at *8.

As such, the court concludes that for the services performed postpetition, the Application best proceeds under section 503(b)(4).[6] Returning therefore to the language of that section, one sees that an award for an administrative expense under section 503(b)(4) requires a two-part analysis, first the existence of an entity with expenses allowable under section 503(b)(3) and second services to that entity that are reasonable. 11 U.S.C. § 503(b)(4).

The first factor establishes a threshold for section 503(b)(4) compensation: the existence of a section 503(b)(3) entity with allowable expenses. *29 Brooklyn Ave.*, 548 B.R. at 651 ("[T]he Receiver's request for compensation was allowed under § 503(b)(3)(E). This provides the basis for allowing the Receiver's counsel's request for compensation under § 503(b)(4)."); *see also N. Sports, Inc. v. Knupper (In re Wind N' Wave)*, 509 F.3d 938, 946 (9th Cir. 2007). The word "allowable" does not require the actual award of a section 503(b)(3) administrative expense. *In re Gurley*, 235 B.R. 626, 635 (Bankr. W.D. Tenn. 1999) ("Section 503(b)(4) literally requires only that the requesting entity's expense be 'allowable under paragraph (3),' not that such expenses actually be allowed."). The Assignee, whose expenses are not just allowable but have in fact been allowed, *see* Assignee Award, satisfies this criterion.

---

[4]   The standards are the same because the applicable section, section 503(b)(4), is the same for each period. What is different is the treatment after allowance. Because this case has been converted, it is necessary to separately quantify the chapter 11 services from the chapter 7 ones for the purpose of payment. *See* 11 U.S.C. § 726(b).

[5]   *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate"). Depending on its type, even the Retainer would arguably be property of the estate. *In re Caesars Entm't Operating Co., Inc.*, 561 B.R. 420, 436 (Bankr. N.D. Ill. 2015) (Goldgar, J.). While that would not change the conclusion that section 543 applies to the prepetition period, it underscores why Katten may not simply apply the Retainer without court authority.

[6]   As noted earlier, the Application also seeks to proceed under section 503(b)(1), the general provision for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Because the more specific section, section 503(b)(4) is directly on point, the court declines to consider the application of the general provision. "Where a subsection of section 503(b) directly addresses the type of administrative expense sought, those restrictions cannot be avoided by appealing to the non-exclusive nature of section 503(b)." *Surrey Inv. Servs., Inc. v. Smith*, 418 B.R. 140, 148 (M.D.N.C. 2009); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."); *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995) ("[W]hen forced to choose between specific substantive provisions and a general savings clause, we choose the more specific provisions because we believe they express congressional intent more clearly.").

The second factor is reasonableness, the standard Katten must also satisfy with respect to its prepetition services if it proceeds under section 543(c)(2). Before taking up the question of reasonableness, in light of the foregoing, the court returns to the Trustee's objections.

B.     The Trustee's Objections

The Trustee has objected, raising four points of concern with the Application: (1) the Assignee's alleged failure to obtain retention for Katten under section 327 of the Bankruptcy Code; (2) a perceived limitation on services of professionals to trustee to prepetition services only; (3) the reasonableness of the services generally and the sufficiency of the time entries; and (4) the reasonableness of Katten's services in preparing and defending the Assignee Application. The court will take up each of these points in turn.

1.     *Katten Need Not Be Retained under Section 327*

The Trustee's first contention is that Katten is barred from an administrative expense because it failed to obtain court approval under section 327, which states that:

> Except as otherwise provided in this section, *the trustee*, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

Despite the Trustee's contention, section 327 does not apply in this situation. It is well established that section 327 only applies to trustees and debtors when acting in a trustee's stead. That is due to the express language in section 327 making it applicable to trustees and, as applicable, the language of other Bankruptcy Code provisions bestowing the rights and obligations of trustees on debtors. *See, e.g.*, 11 U.S.C. § 1107(a). Without such provisions, section 327 simply does not apply. For example, committees must look to their own authorizing sections for the appointment of counsel. *See, e.g.*, 11 U.S.C. §§ 1102 & 1103. Chapter 13 debtors, who do not have the powers and duties of a trustee, need not retain their counsel under section 327. *In re Maldonado*, 483 B.R. 326, 337 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) ("Section 327 does not apply in Chapter 13 cases."); *see also In re Jones*, 505 B.R. 229, 231 (Bankr. E.D. Wis. 2014) ("[A]n individual chapter 13 debtor ... is not a 'trustee' for purposes of § 327.").

The Assignee is a custodian, not a trustee or an entity with comparable duties such as a debtor in possession. *In re 400 Madison Ave. Ltd. Pshp.*, 213 B.R. 888, 894-95 (Bankr. S.D.N.Y. 1997) ("Simply put the receiver [custodian] has absolutely no responsibility to ensure the progress of the case by filing a plan of reorganization or negotiating with creditors or to perform any other duties which are the prerogative and burden of a debtor-in-possession and a trustee."). The Assignee thus was not subject to the employment provisions of section 327.

Because Katten was not employed under section 327, the general compensation provisions under section 330 did not, by their express terms, apply to it. *See* 11 U.S.C. § 330(a)(1); *cf.* 11 U.S.C. § 330(a)(4)(B) (providing an alternative standard for compensating counsel in chapter 13 matters,

9

where professionals are not retained and thus not subject to section 330(a)(1)). Here, professionals providing services to custodians have an alternative standard for compensation codified in sections 503(b) and 543. They need not look elsewhere.

2. *Both Prepetition and Postpetition Services May Be Compensated*

The second contention of the Trustee is that only the prepetition services of Katten are compensable as administrative expenses. As discussed above, this is not how the statute works.

Both parties correctly assert that prepetition administrative expenses for a custodian's counsel are compensable. The parties mutually rely on *In re Kenval Mktg. Corp.*, 84 B.R. 32, 34 (Bankr. E.D. Pa. 1988). The Trustee therefore does not challenge Katten's prepetition fees on this ground. As the court noted above, either section 543(c)(1) or section 543(c)(2) would suffice as grounds to authorize the payment for the prepetition period. Nonetheless, Katten must still demonstrate that the predicates of those sections have been met.

The Trustee does, however, argue that postpetition fees may not be included in an administrative expense under section 503(b)(3)(E). This is correct, as there exists a separate provision for the compensation of professionals to custodians in section 503(b)(4), but not because of the postpetition nature of the services. The Trustee's argument, in fact, runs contrary to the traditional holding that administrative expenses are those that occur on a postpetition basis, not prepetition ones as the Trustee suggests. *Stainless I*, 579 B.R. at 845.

The court need look no further than the words of the statute to reject this argument. Section 503(b) makes no general mention of the prepetition or postpetition nature of the expenses thereunder. At points in the section, Congress has been specific. *Compare* 11 U.S.C. § 503(b)(1)(A)(i) ("services rendered *after the commencement of the case*") *with* 11 U.S.C. § 503(b)(9) ("the value of any goods received by the debtor within 20 days *before the date of commencement of a case*") (emphasis added in each). Sections 503(b)(3)(E) and 503(b)(4) have no such limiting provisions.

Here, there is no reading of section 503(b) that would limit these expenses to prepetition only.

3. *The Reasonableness Factor Generally*

As noted above, at the Hearing on the Application, the court stated that it would narrow its analysis to the legal issue of whether or not the Assignee was entitled to an administrative expense as a matter of law, leaving for later determination, if necessary, a hearing on the exact amounts of an administrative expense.

Before taking on the analysis of reasonableness, the court must first put to rest certain of the arguments and, hopefully, channel the future discussions in a productive way.

(a) *Adkins* and *Per Se* Reasonableness

The Trustee is correct that in order for services to be compensated under either section 503(b)(4) or 543(c)(2), the compensation must be reasonable. *In re 444 N. Nw. Hwy, LLC*, Case No. 12 B 27041, 2013 WL 122527, at *9 (Bankr. N.D. Ill. Jan. 8, 2013) (Schmetterer, J.) ("[A] receiver's

unpaid bills, including those of his counsel, must be determined to be reasonable before being paid.") (*citing 400 Madison Ave. Ltd. Pshp.*, 213 B.R. at 898); *see also 29 Brooklyn Ave.*, 548 B.R. at 652. Under section 503(b)(4), reasonableness is a factor of the nature, extent and value of the services and the comparable nonbankruptcy cost of such services. 11 U.S.C. § 503(b)(4). No additional factors are set forth in section 543(c)(2).

The Assignee argues that the section 503(b)(4) compensation Katten seeks is *per se* reasonable as it is "fused" with the Assignee's allowed expenses. *In re R.L. Adkins Corp.*, 505 B.R. 770, 779 (Bank. N.D. Tex. 2014). *Adkins* holds that services performed at the behest of a custodian must be compensated if the custodian's services are compensated. *Id.* The court there bases its holding on a substantial contribution theory and "fuses" the counsel's substantial contribution to that of its client. *Id.*

There is, however, nothing in the statute that makes this so, and the *Adkins* court itself acknowledges that "[s]uch construction does not necessarily follow from a strict reading of subsections (b)(3)(D) and (b)(4) of the statute ... ." *Id.* Further, substantial contribution, the theory upon which *Adkins* is predicated, is not implicated under section 503(b)(3)(E), the section under which the Assignee's expense was approved. *Adkins* ruling is, therefore, expressly limited to section 503(b)(3)(D), the section containing that concept.

As a result, *Adkins* is inapplicable here and Katten's services are not "fused" with those of the Assignee. The court is statutorily compelled to apply the reasonableness requirement to the compensation. 11 U.S.C. § 503(b)(4).

 (b) <u>Applicable Standard and Facts at Bar</u>

With respect to that reasonableness requirement, it is clear first and foremost that the court must make an independent finding of reasonableness. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1178 (7th Cir. 1994); *In re Pettibone Corp.*, 74 B.R. 293, 300 (Bankr. N.D. Ill. 1987) (Schmetterer, J.). Courts have, however, looked to section 330 to provide standards for this independent finding under section 503(b). *Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1341 (11th Cir. 2000).

Section 330 states, in pertinent part, that

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charge for such services;
>
> (C) whether services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title;

11

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The *Celotex* approach is sound. The court will follow it in this matter.

In doing so, the court takes into account the rarity of this situation. The Assignee and Katten have seen this case through a number of unique and potentially legally-distinct phases. This case began with an involuntary petition timed, so it appears, to occur at the most disruptive possible point in the Assignee's tenure—immediately following the Auction, before the underlying Sale could be consummated. Once the Petition was filed, the Assignee and Katten were forced to consider how to comply with section 543 in what was obviously a grey period and determine what, if anything, should be done about the interrupted Sale. The entry of the 543 Order alleviated some of those concerns, but once again, after the Conversion but before the Trustee was appointed, another grey period arose.

The first of these grey periods arose out of the unique combination of this being an involuntary chapter 11 filed to interrupt the ABC and there being little or no participation in the Case by the Debtor. Given the Debtor's lack of interest in the Case, the Case was in desperate need of an interim trustee. No provision for that exists for involuntary chapter 11 cases, however. *But see* 11 U.S.C. § 303(g) (allowing for an interim trustee to be appointed before the entry of an order for relief in an involuntary chapter 7). Instead, there was no party to protect the Assets other than the Assignee.[7] The Assignee moved promptly for guidance from the court, but even then was forced to do so on an interim basis given that no order for relief had been granted and thus the Debtor's rights were still nebulous. Section 543 gives no guidance as to how it should apply in such cases.

The entry of the Order for Relief and subsequent orders under section 543 may have provided some degree of additional certainty, but on the same day the Order for Relief was entered,

---

[7] In a voluntary chapter 11 bankruptcy, the debtor in possession fills the role of trustee from the outset. 11 U.S.C. §§ 1101(1) and 1107. In involuntary cases, the petition does not automatically generate an order for relief and thus the debtor is not immediately responsible for the administration of the case. Such an order for relief happens later. *Compare* 11 U.S.C. § 301(b) (commencement in a voluntary case "constitutes an order for relief.") *with* 11 U.S.C. § 303(h) (order for relief in involuntary cases happens after the passage of time and satisfaction of statutory predicates). Absent the appointment of an interim trustee, *see* 11 U.S.C. § 303(g), a debtor in an involuntary case acts without many of the duties and limitations applicable in voluntary cases. *See, e.g.*, 11 U.S.C. § 303(f). Nonetheless, nothing in sections 303 or 543 suspends a custodian's section 543 obligations in such instances. Thus while the Assignee had an obligation to deliver the Debtor's rights and property to the Debtor, the Debtor had arguably no obligation to accept them.

the petitioning creditors moved for the appointment of a trustee and a secured creditor moved for an order converting the case to one under chapter 7. Though the Conversion was ultimately ordered, it occurred more than a month after the Petition Date. During this period, the Assignee was forced to maintain the Assets and, by order of the court, consummate the Sale.

The second grey period is of similar, though shorter nature, but occurred after the Conversion but before the Trustee was appointed. While the United States Trustee appointed a trustee on the day following the conversion, that trustee resigned. It was nine days after the Conversion that the Trustee took on his role. While it could be argued that the Conversion terminated the excuse from compliance permitted by the 543 Order, the Assignee was again left in the uncomfortable position of being the custodian of the Assets with no clear avenue to follow.

Following the appointment of the Trustee, all that remained for the Assignee was to turnover the remaining Assets and make an accounting for its actions. A custodian may be compensated for those actions. *Kenval Mktg.*, 84 B.R. at 35-36. It follows, therefore, that a custodian's professionals may also be compensated for assisting in those actions. *In re Snergy Props., Inc.*, 130 B.R. 700, 705 (Bankr. S.D.N.Y. 1991) ("[T]he custodian is entitled to apply to the bankruptcy court pursuant to 11 U.S.C. § 543(c)(2) for reasonable compensation for services rendered and costs and expenses incurred, *including legal fees reasonably incurred* in connection with the custodian's services.") (emphasis added).

(c)    Cap on Compensation

The Trustee contends that compensation for the preparation and litigation of custodian fee applications is limited to a proportionate amount of the compensation awarded for the total hours in the main case. Courts have applied limits in the range of 3% to 5% in this regard. *In re Spanjer Bros., Inc.*, 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996) (Squires, J.) (compensation limited to 5%); *In re Wildman*, 72 B.R. 700, 711 (Bankr. N.D. Ill. 1987) (Schmetterer, J.) ("*In the absence of unusual circumstances*, the hours allowed by this Court for preparing and litigating the attorney fee application should *not exceed three percent* of the total hours in the main case.") (emphasis added); *see also Pettibone*, 74 B.R. at 304 (*citing Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986)) (in non-bankruptcy cases, compensation for preparation and litigation of fee petitions limited to 3-5% of the hours of the main case).

The purpose of these holdings is to prevent unnecessary costs to the estate. Absent unusual circumstances, the court might not vary from the standard set by these cases. Given the issues briefly described above, unusual circumstances do exist. Even in the best of cases, applying normal rules of thumb for professional compensation in other areas to applications in the context of section 543 is hardly fair. The rules governing these requests are convoluted and ill-conceived. *See, e.g., Montemurro*, 2018 WL 836387, at *11; *Stainless I*, 579 B.R. at 845.

As best as the court can determine, the compensation requested for preparation and litigation of the Assignee Application makes up approximately 10% of the Application's total requested compensation. Under the unique circumstances of this case, the court finds such efforts to be reasonable.

(d)    The American Rule

Recently the Supreme Court has applied the American Rule to the defense of fees under section 330 of the Bankruptcy Code. *Baker Botts L.L.P. v. ASARCO LLC*, — U.S. —, 135 S. Ct. 2158, 2164 (2015). The American Rule is simple: "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-253 (2010).

In *ASARCO*, the Supreme Court found section 330 not to be the type of fee-shifting statute contemplated as an exception to the American Rule, stating that:

> To be sure, the phrase "reasonable compensation for actual, necessary services rendered" permits courts to award fees to attorneys for work done to assist the administrator of the estate, as the Bankruptcy Court did here .... No one disputes that § 330(a)(1) authorizes an award of attorney's fees for that kind of work. But the phrase "reasonable compensation for actual, necessary services rendered" neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other—in this case, from the attorneys seeking fees to the administrator of the estate—as most statutes that displace the American Rule do.

*ASARCO*, 135 S. Ct. at 2165 (2015) (citation omitted).

In the context of section 503(b)(1), this result comports with the other case law on the matter. *See, e.g., In re Morry Waksberg M.D., Inc.*, 692 F. App'x 840, 841 (9th Cir. 2017) (finding that section 503(b)(1) did not effectuate fee shifting, thus an applicant's counsel could be reimbursed for the costs of applying but not the costs of defending an application thereunder).

The language of section 503(b)(4) is similar to the complained of language in section 330, allowing "reasonable compensation for professional services rendered by an attorney or an accountant of an entity ... and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

In *29 Brooklyn Ave.*, however, the court found cause to distinguish section 503(b)(4) from section 330 and *ASARCO*, stating that:

> The outcome in [*ASARCO*] hinged on the Court's interpretation of the word "services." Litigating against one's own client did not fall within the Court's view of what constitutes "actual, necessary services rendered" under § 330(a). But in this case, the legal services in question were rendered to the client. The work performed by the Receiver's counsel in litigating the fee application was "labor performed for" and "disinterested service" to the Receiver.

*29 Brooklyn Ave.*, 548 B.R. at 647 (citations omitted). "Therefore, since the Receiver's underlying services provided a benefit to the estate, and the fees incurred defending the proof of claim were necessary in this case, those fees are allowable under § 503(b)(4)." *Id.* at 652.

The court agrees. Much of Katten's services were performed in successfully defending the Assignee Application. This case exemplifies the type of case where a custodian is entitled to the

14

protections Congress afforded it in the statutes. The Assignee's services were necessary and reasonable. So too, are Katten's efforts in defending the Assignee Application.

(e) <u>Expenses</u>

Neither section 543(c)(1) nor (2) make clear how to treat counsel's expenses if counsel to a custodian is being compensated thereunder. Because such expenses are assessable to the custodian by its counsel, it follows therefore that the counsel's expenses may also be reimbursed thereunder. *Randolph*, 190 U.S. at 538. In the court's determination, *Leventhal*, 19 F.3d at 1178; *Pettibone*, 74 B.R. at 300, the standard under either section should be as it is generally in these provisions—reasonableness. Should Katten seek the authority of the court to apply the Retainer to prepetition expenses, it must meet this standard.

That said, even under this more expansive view, Katten's application costs are extraordinary. As part of the Application, Katten submitted Invoice No. 1301396983 in the amount of $22,042.50. This invoice is entirely spent on matters relating to compilation and submission of the Assignee Application. Excluding this amount from the total Application and excluding unsupported prepetition and post-Application fees, the total amount applied for by Katten is $60,682.50, resulting in a 36% application cost. This is beyond what the court may allow.

Under the circumstances, the court will expand the traditional 3-5% set forth in the cases above to 10%, but no more. Ten percent of $60,682.50. The court will therefore allow the fees sought in Invoice No. 1301396983 in the amount of $6,068.25. The remainder of this request is disallowed.

4. *The Reasonableness of the Application Specifically*

All the foregoing brings us in what is, essentially, a full circle—back to the question of reasonableness. The Trustee has challenged the reasonableness of specific tasks performed by Katten, providing an annotated version of Exhibit 1 and Exhibit 3 to the Application with cursory one-word objections to Katten's time entries (such as long, vague, and duplicative).

As discussed above, applicable case law allows the court to apply the standard of section 330(a) to both compensation and expenses under section 503(b)(4). As a result, the court has reviewed the Application with those rules in mind. Bankr. N.D. Ill. R. 5082-1; *see 444 N. Nw. Hwy, LLC*, 2013 WL 122527, at *17; *see also, e.g.*, Assignee Award, at *1.

Excluding the costs of the Application discussed above, the Assignee has sought $52,158.00 for Katten's services and $589.09 for Katten's expenses prior in the chapter 11 case and $8,524.50 for services and $3,141.74 for expenses in the chapter 7 case.[8] The court considers each period's request, in turn.

---

[8] Katten has suggested, in the Supplement, that it has further fees and expenses incurred after the date of the Application. It also has, as is noted several times herein, not substantiated its prepetition request. This Memorandum Decision makes no finding as to either, nor does it preclude a further application for those periods, if one is warranted.

15

  (a)  <u>Katten's Chapter 11 Services and Expenses</u>

The Assignee has sought $52,158.00 for Katten's services and $589.09 for Katten's expenses in the chapter 11 case, from the Petition Date (February 3, 2017) to the entry of the Conversion Order on March 7, 2017. The court has reviewed the time entries and expenses in light of the applicable standards under section 503(b)(4) set forth above and the normal rules of compensation of this District, and finds the following reductions to apply:

As for services, a small amount of time (2.6 hours @ $375.00/hour) was either purely clerical in nature or of no benefit to the client. In addition, an even smaller amount of time was billed for a consultation in excess of the other party's time entries for the same consultation (0.2 hours @ $790.00/hour). As such, the court finds that $1,133.00 of the services rendered are not reasonable. The remainder will be allowed. As for expenses, multiple taxis were charged to attend court hearings approximately seven blocks from Katten's offices ($42.00). In the absence of further substantiation of the need for those taxi expenses are unnecessary and thus are disallowed. The remainder will be allowed.

As a result, the court allows as reasonable compensation $51,025.00 for services and $547.09 for actual, necessary expenses for this period.

  (b)  <u>Katten's Chapter 7 Services and Expenses</u>

The Assignee has sought $8,524.50 for Katten's services and $3,141.74 for Katten's expenses in the chapter 7 case, from the entry of the Conversion Order on March 7, 2017 to the filing of the Application on September 1, 2017. The court has reviewed the time entries and expenses in light of the applicable standards under section 503(b)(4) set forth above and the normal rules of compensation of this District, and finds the following reductions to apply:

As for services, the court finds the entire amount to be reasonable. The requested amount will be allowed. As for expenses, Katten mailed on June 22, 2017 a total of 255 items by certified mail, without any description of the need for certified mail as opposed to regular United States mail. The standard compensable mail costs for regular United States mail by meter is $0.47/letter. As a result, the court will reduce the requested $2,145.38 for certified mail costs to an allowed expense of $119.85 (255 items @ $0.47). The result is a reduction of $2,025.53. The remainder will be allowed.

As a result, the court allows as reasonable compensation $8,524.50 for services and $1,116.21 for actual, necessary expenses for this period.

16

CONCLUSION

In conclusion, the Application is approved and Katten's fees and expenses are allowed in the manner discussed above. A separate order in that effect will be entered concurrently herewith.

Dated: March 30, 2018

_____
Timothy A. Barnes
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bk03148 |
| | ) | |
| Stainless Sales Corporation, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

### ORDER

Upon the Application for Allowance and Payment of Administrative Expense Claim [Dkt. No. 181] (the "Application") brought by Michael J. Eber (the "Assignee") for administrative expenses incurred by Assignee's counsel Katten Munchin Rosenman LLP ("Katten"); due notice having been given; the court having jurisdiction over the subject matter and having conducted a hearing on the matter on November 29, 2017 (the "Hearing"); and the court having considered the arguments of the parties in the Application and the filings related thereto and at the Hearing, and for the reasons more fully set forth in the Memorandum Decision issued concurrently herewith;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

The Application is GRANTED as set forth herein. Katten is allowed an administrative expense with priority under 11 U.S.C. § 503(b)(4) as follows: (1) For the period from February 3, 2017 to the entry of the order of conversion on March 7, 2017:

| | | |
|---|---|---|
| Fees: | $51,025.00 | |
| Expenses: | $547.09 | |
| | Total | $51,572.09 ; and |

(2) For the period from the entry of the order of conversion on March 7, 2017 to the filing of the Application on September 1, 2017:

| | | |
|---|---|---|
| Fees: | $8,524.50 | |
| Application Fees: | $6,068.25 | |
| Expenses: | $1,116.21 | |
| | Total | $15,708.96 . |

The court makes no ruling with respect to Katten's prepetition fees or expenses (or the application of the any retainer thereto) or any addition, post-Application fees or expenses of Katten, as those requests have not been made in particularity and are not properly before it. This order does not preclude a further application for either of those two periods.

Dated: March 30, 2018        ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge